WILLIAM T. A. HART, Respondent, *v.* THE SUN PRINTING AND PUBLISHING ASSOCIATION, Appellant.

*Libel — whether a communication be privileged is a question of law — head lines introducing a report of a judicial proceeding — what is not a reasonable effort on the part of an administrator to sell property of the estate for its value.*

In an action brought to recover damages for the publication of an alleged libel the question whether a communication containing the libel was privileged is one of law to be determined by the court.

The privilege which protects the publishers of a report of a judicial proceeding from libelous charges, does not include imputations voluntarily made which are plainly irrelevant and impertinent.

In an action brought to recover damages for the publication of an alleged libel it was shown that a newspaper published the following:

"SEXTON HART ASKED TO EXPLAIN.

" *Creditors of an Estate Not Satisfied With His Administration.*

"William T. Hart, sexton of St. Patrick's Cathedral on Fifth avenue, is having tribulations of a complicated character with the creditors of the estate of Archibald Johnston, of which he is the administrator. Mr. Hart made a statement of his stewardship which Langan Bros., the dissatisfied creditors, say will not bear a searching examination, and after a referee had disagreed with them they referred it to Surrogate Ransom. Johnston was proprietor of the livery

stables at 102, 103, 104 and 105 East Thirteenth street, and died insolvent.  The estate amounted to about $16,000, and Mr. Hart set himself to clear it.  In this clearing process, according to Langan Bros., about $9,000 disappeared.  The hearing will come up next Monday."

*Held,* that the head lines of such article were not privileged under sections 1907 and 1908 of the Code of Civil Procedure, and, when considered in connection with the article introduced by them, were libelous;

That while the statements contained in such article were defamatory, yet, if they constituted a fair and true report of the judicial proceedings therein referred to, the defendant's claim of privilege should be sustained in the absence of proof of actual malice on its part;

That if, as a matter of law, the evidence showed that the plaintiff had been improvident in the sale of certain leasehold premises belonging to the estate, of which he was administrator, the jury should have been so charged at the defendant's request, and a failure to do so was an error sufficient to justify the reversal of a judgment rendered in favor of the plaintiff.

The fact that the administrator of an estate advertised the property belonging to the estate for sale in a manner calculated to prevent competition, and permitted a sale of it in his presence to his personal friend for about one-fifteenth of its actual value, shows that he did not make a reasonable effort to secure for the estate what such property was fairly worth.

Appeal by the defendant, The Sun Printing and Publishing Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of April, 1893, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 8th day of May, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Franklin Bartlett,* for the appellant.

*David McClure,* for the respondent.

Parker, J. :

The judgment under review awards to the plaintiff damages against the defendant because it published in the *Sun* newspaper on the 13th of November, 1890, the following :

"Sexton Hart Asked to Explain.

" *Creditors of an Estate Not Satisfied with His Administration.*

"William T. Hart, sexton of St. Patrick's Cathedral on Fifth avenue, is having tribulations of a complicated character with the

creditors of the estate of Archibald Johnston, of which he is the administrator. Mr. Hart made a statement of his stewardship which Langan Bros., the dissatisfied creditors, say will not bear a searching examination, and after a referee had disagreed with them they referred it to Surrogate Ransom. Johnston was proprietor of the livery stables at 102, 103, 104 and 105 East Thirteenth street, and died insolvent. The estate amounted to about $16,000, and Mr. Hart set himself to clear it. In this clearing process, according to Langan Bros., about $9,000 disappeared. The hearing will come up next Monday."

On this appeal it is urged that the trial court erred:

*First.* In refusing to dismiss the complaint on the ground that the defendant had established the defense of justification pleaded by it.

*Second.* In denying a motion to direct a verdict in favor of the defendant on the ground that the article being a fair and true report of a judicial proceeding, recovery was impossible without proving actual malice, which was not attempted.

*Third.* In refusing to charge certain requests of the defendant.

Touching the first ground assigned as error, it should be said that evidence was presented on the part of the defendant pointing strongly towards the truthfulness of many of the assertions complained of. If it be assumed that the testimony would have permitted a finding that the article was substantially true, it did not require it.

A question for the jury was, therefore, presented in such respect, and the court properly refused to take it from them.

The Code of Civil Procedure (§ 1907) provides, among other things, that an action cannot be maintained for the publication of a fair and true report of any judicial proceeding without proving actual malice. As the plaintiff did not prove actual malice it is insisted that a verdict should have been directed in favor of the defendant on the ground that the publication was privileged.

Prior to the publication certain proceedings had been had in the Surrogate's Court relating to the administration of plaintiff, resulting in an appointment of a referee, the taking of testimony before him, and a report to the Surrogate's Court. The defendant insists that the article complained of was a fair and true report of such proceed-

ings.   Whether the communication was privileged was a question of law for the court.   (*Lovell Co.* v. *Houghton,* 116 N. Y. 520.) The inquiry now is whether the trial court rightly decided it.

Section 1908 so qualifies section 1907 as to make it inapplicable to a libel contained in the heading of such a report, or to any matter added by a person concerned in the publication, or to anything appearing in the report but not forming a part of the official proceedings.   And it is the general rule that a privilege which protects publishers of reports of judicial proceedings from libelous charges does not include imputations voluntarily made which are plainly irrelevant and impertinent.   (*Moore* v. *Bank,* 123 N. Y. 420.)

Under the section of the Code referred to the head lines of this article are not privileged.   And, considered in connection with the article which they introduce, they are libelous.   Nor can it be said that the article was a fair and true report of the judicial proceedings which had taken place at the time of its publication.

Objection had been taken to the administrator's account, the testimony taken before the referee and the requests to find on either side presented, resulting in a report by the referee favorable to the plaintiff.   Clearly, such is not the impression given by the reading of the article.   It suggests defeat rather than triumph.   It charges that plaintiff had been asked to explain; that the creditors were not satisfied with his administration; that he was having tribulations of a complicated character; that his stewardship had not borne a searching examination; that Johnston had died insolvent leaving an estate which the plaintiff had set about to clear, and that the clearing process had resulted in the disappearance of $9,000.

While these statements are libelous, still, if they constituted a fair report of the judicial proceedings which had been had at the time of their publication, the defendant's claim of privilege should have been sustained, for actual malice on the part of defendant was neither proved nor attempted.   But it cannot be said, as matter of law, that all of the libelous charges with which the article abounds had adequate support either in the testimony taken before the referee or in the proceedings before the surrogate.   By way of illustration it may be observed that the assertion that in the clearing process

the plaintiff had caused the disappearance of about $9,000 is not sufficiently sustained.

The learned court, therefore, ruled correctly in such respect.

The seventh request was as follows :

"*Seventh.* The evidence shows that the alleged sale by William T. A. Hart of the right, title and interest of the intestate, Archibald Johnston, to the leasehold premises 105 and 107 East Thirteenth street to James Kenny for $110 was improvident, negligent and in violation of said Hart's duty as administrator."

If, as a matter of law, the evidence demonstrated that plaintiff had been improvident in the respect named in the request, it is apparent that the jury should have been so charged, for, while it might not have operated to prevent a recovery, it is not unlikely that it would have had the effect of reducing the amount of damages awarded.

The effect of the refusal naturally was to lead the jury to believe that such portion of the article was not true, and to persuade them to compensate the plaintiff because of it. And we must assume that it was considered by the jury in awarding damages.

The inquiry then is whether the evidence justified the request. That Archibald Johnston owned an undivided one-eighth of the leasehold premises at the time of his death is demonstrated. An attempt was made to confuse the question of ownership upon the trial, but it was not successful.

Hart owned an undivided one-half interest, and subsequently he purchased of Mrs. Johnston an undivided one-eighth owned by her, for which he paid $1,500. This purchase furnishes some evidence at least of Hart's opinion as to the value of the one-eighth owned by the estate.

What Hart, as administrator, did was to advertise the interest of the estate for sale at the Real Estate Exchange, and thus was given to it the appearance of regularity. But the notice of sale did not assert that the interest to be sold was one-eighth, but rather that it was all of the interest of the deceased, whatever it was, and was believed to be one-eighth. The indefiniteness of the notice of sale respecting the quantity of the estate to be sold was certainly not calculated to encourage bidders. Nor did it have that effect, for at the sale it was struck down to Mr. Merritt, counsel for Hart, whose

bid was in form made for a Mr. Kenny, who turns out to have been a friend of the administrator, having constant business relations with him, for $110 — nearly $1,400 less than Hart paid Mrs. Johnston for a like interest.

A quarter interest was still outstanding, and Hart commenced an action of partition which resulted in a sale of the leasehold estate, of which he became the purchaser.

The sum of money which he subsequently realized for the property thus purchased makes it clear that the one-eighth interest was fairly worth at least the sum which he paid Mrs. Johnston for her interest.

Without presenting more of the details of the testimony it is apparent that Hart was neglectful and improvident in the discharge of his duty as administrator in respect to the interest under consideration.

If he was not the real beneficiary of the purchase nominally made for Kenny's benefit, in which direction the evidence strongly points, his friend was.

Assuming the most favorable view possible, and we have presented a case where an administrator advertising property for sale in a manner calculated to prevent competition, permits a sale of it in his presence to his personal friend for about one-fifteenth of its actual value. Under such circumstances it is not possible to reach the conclusion that he made a reasonable effort to secure for the estate what the interest was fairly worth. On the contrary, the evidence considered as a whole required the determination reached in another forum where a referee found that the administrator, this plaintiff, had been neglectful of his duty, and this court, in affirming the decision of the referee, said : " With respect to this sale to Kenny the referee held that it was improvidently made and in violation of their duty as administrators, and that the administrator Hart should be personally charged with the value thereof, with interest." (*In re Johnston Estate,* 74 Hun, 618.)

Having reached the conclusion that the court erred in refusing to charge as requested, it follows that the judgment should be reversed, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.